Judgment reversed, with costs, and complaint dismissed, with costs.

In the Matter of the Application of ST. JOHN'S CHURCH OF MT. MORRIS, N. Y., Trustee of the Trust Created under the Fifth Clause of the Will of CHARLES F. SWAN, Deceased, Respondent, for an Interpretation and Liberalization of the Provisions of Said Clause under Section 12 of the Personal Property Law and Section 113 of the Real Property Law of the State of New York.

FRANCES L. SWAN KELLY and Others, Appellants.

Fourth Department, January 4, 1933.

*Arthur E. Sutherland, Jr.*, for the appellants.

*John F. Connor* [*Frank K. Cook* of counsel], for the respondent.

EDGCOMB, J.  Charles F. Swan died on the 25th day of May, 1910.  He left a last will and testament, which was duly admitted to probate in the Surrogate's Court of New York county on the 7th day of March, 1911.  The pertinent part of that will, so far as this appeal is concerned, reads as follows:

"*Fifth.* I give and bequeath the use of the rest, residue and remainder of my estate, real and personal, to my wife, Helen M. Swan, during the term of her natural life, and at her death I devise and bequeath said rest, residue and remainder of my estate real and personal, to St. John's Church of Mount Morris, N. Y., in trust, to be taken, held and controlled by the vestry of said church under and pursuant to the provisions of Chapter 369 of the Laws of 1906, entitled: ' An Act to authorize St. John's Church, Mount Morris, New York, to set apart certain funds as an endowment fund, and to restrict the use and investment thereof.'

" This devise in remainder to said Church is made, upon condition of the use and application thereof in manner following, to wit:

" It is my wish and desire, in memory of my mother, to provide for the establishment of a home for old women, and in furtherance thereof, and for that purpose, I hereby authorize and empower the vestry of said Church to provide a Home for Protestant, worthy, indigent females in the village of Mount Morris, and to set apart for that purpose the Swan Homestead on the corner of Main and Hopkins Streets in said village, for their occupancy, and out of the use, interest and income of the real and personal property so as aforesaid devised and bequeathed to said church, provide for the support and maintenance of the inmates of said Home. The said Home to be under the management of said vestry, and

admission of applicants or proposed inmates to be regulated by such reasonable and proper rules as may be made by said vestry.

" The same to be known as the Swan Memorial Home."

Mrs. Swan, the life beneficiary named in the will, died on the 19th day of October, 1928. In the late summer of 1930 the residue of the estate, constituting this trust fund, was turned over to the treasurer of St. John's Church. The property thus received consisted of $1,494.32 in cash, securities valued at the sum of $116,555.50, and the real estate situate in the village of Mt. Morris known as the Swan homestead, which was appraised at the sum of $4,000.

Claiming that circumstances have so changed since the execution of the will as to render impracticable and infeasible a literal compliance with the terms of the trust, in so far as it authorized and empowered the trustee to use the Swan homestead for the purpose of the home which the decedent created, the trustee moved at Special Term for an order applying the *cy pres* doctrine, and permitting the movant to administer said trust free from the restriction requiring the use of said Swan homestead for the purpose of said home, and directing that the available income of the trust be expended for the support and maintenance of Protestant, worthy, indigent females in private or institutional homes, the selection and maintenance of such women to be regulated by reasonable and proper rules to be adopted by the vestry of the church. The Attorney-General appeared, but no one else was given notice of the motion. The relief asked for by the trustee was granted. Thereupon the heirs of Mr. Swan obtained an order directing said trustee to show cause why the original order should not be vacated, and the petition of the trustee be dismissed, or why the original order should not be annulled, and the proceeding reopened, and process issued to all parties interested in the proceeding. This motion was denied, and the appeal from that order is now before us.

Before taking up the claims of the respective parties, attention should be called to an action commenced in the Supreme Court of Monroe county in 1913 by Frances L. Swan Kelly, one of the heirs of Charles F. Swan and one of the appellants here, against all of the legatees and devisees under decedent's will, including St. John's Church. The plaintiff in that action demanded judgment: (1) That the bequest of the remainder of decedent's property, as provided in the fifth clause of the will, after the life use of Mrs. Swan, be declared invalid; (2) that in case it was determined that said bequest was not wholly void, that the same be declared invalid in so far as it operated to devise or bequeath more than

one-half of decedent's property at the time of his death to the church in trust; (3) that decedent be declared to have died intestate as to the residue of his property; (4) that, in case it was not determined that decedent died intestate as to the residue of his property, it be declared that he died intestate as to one-half of his estate after deducting the specific legacies mentioned in the first four paragraphs of the will and the value of Mrs. Swan's life estate. The complaint alleged that St. John's Church was unwilling and unable to accept the trust created by the will, and to undertake and fulfill the obligation thereof. The church denied this allegation, and it was put in issue by the pleadings. The action was finally settled. The parties entered into a stipulation by which the Swan heirs gave up their contention that more than the legal share of the estate had been left to charity, and judgment was entered in conformity with such stipulation. The judgment provided " that if upon or after the death of Helen M. Swan, St. John's Church, Mount Morris, N. Y. shall renounce or refuse to accept the residuary devise and bequest to it in trust, contained in said paragraph ' Fifth ' of the will of Charles F. Swan, deceased, that said Charles F. Swan shall be adjudged to have died intestate as to said residuary estate as bequeathed and devised to St. John's Church, Mount Morris, N. Y., in trust."

Mention should also be made of the proceedings for the judicial settlement of the accounts of the executors and trustees under the will of. Charles F. Swan in the Surrogate's Court of New York county in October, 1929. In that proceeding St. John's Church contended that the gift contained in the fifth clause of decedent's will was absolute, and was burdened with no condition; that the language there used was merely advisory and not mandatory. The surrogate held that, while a valid bequest had been made to the church in the first instance, the testator had placed the qualification upon the gift that it should be used to establish a home for worthy, indigent females. No appeal was taken from this decree.

In the surrogate's proceeding just mentioned, St. John's Church filed its election to accept the devise and bequest made to it in the fifth clause of Mr. Swan's will. The church insists that it always has been and now is willing to carry out the trust set up in decedent's will in such manner as the court may direct.

The appellants claim that, if the church fails to carry out the terms of the trust in the exact manner prescribed in decedent's will, the bequest becomes forfeited because the condition upon which it was' made has been broken, and that, under such circumstances, appellants become entitled to the residuary estate of decedent under the provisions of the judgment in the Kelly action;

that their right of reverter as provided for in that judgment cannot be extinguished by obtaining an order permitting the trustee to administer the trust in a manner different from that specified by the donor. Appellants also attack the original order, as well as the one appealed from, upon the ground that this trust is so intimately connected with the maintenance of the proposed home in the Swan homestead that the *cy pres* doctrine will not be invoked to eliminate the use of that building, and permit the employment of the fund and realty in a manner different from that prescribed by testator.

Section 12 of the Personal Property Law relates to gifts and bequests of personal property for charitable purposes. Subdivision 2 of that section provides as follows:

" Gifts and bequests of personal property for charitable purposes. * * * 2. The Supreme Court shall have control over gifts, grants and bequests in all cases provided for by subdivision one of this section, and, whenever it shall appear to the court that circumstances have so changed since the execution of an instrument containing a gift, grant or bequest to religious, educational, charitable or benevolent uses as to render impracticable or impossible a literal compliance with the terms of such instrument, the court may, upon the application of the trustee or of the person or corporation having the custody of the property, and upon such notice as the court shall direct, make an order directing that such gift, grant or bequest shall be administered or expended in such manner as in the judgment of the court will most effectually accomplish the general purpose of the instrument, without regard to and free from any specific restriction, limitation or direction contained therein; provided, however, that no such order shall be made without the consent of the donor or grantor of the property, if he be living."

Section 113 of the Real Property Law relates to grants and devises of real property for charitable purposes, and subdivision 2 of that section is similar in all respects to subdivision 2 of section 12 of the Personal Property Law.

The trustee moved under the foregoing statutes for the relief which has been accorded.

It should be borne in mind that Mr. Swan died in 1910; that his wife was given the use of all his property during her lifetime; that she lived until 1928; that the property was not turned over to St. John's Church until the late summer of 1930. Much can happen in twenty years; much has happened during the past twenty years. It appears without contradiction that the Swan homestead is an old house; that it has stood vacant for upwards of twenty-five years; that it is badly out of repair; that the plumbing, such as it

was, has been removed by trespassers; that the windows have been broken; that the chimneys have crumbled; that the roof is badly out of repair, and that the water has leaked through onto the ceilings and floors; that the house generally has become untenantable. A competent builder and contractor estimates that it would cost $14,134 to put the property in shape for use as an old ladies' home, and that it would be more economical and practical to tear the old house down, and put up a new building, than to attempt to recondition the present structure. If we are to accept these figures, and there is nothing in the record to indicate that they are incorrect, the trust fund, after payment of the repairs to the building and the necessary furnishings, would be reduced to approximately $100,000. The income which could be derived from this sum would in all probability not exceed $4,250. According to the estimate made by the church, the overhead, if the proposed home is to be maintained in the old homestead, would eat into this income to such an extent that it would leave sufficient to care for but one inmate. While this estimated overhead might be cut down to some extent, so as to leave more money for the care and maintenance of more old women, it cannot be doubted that many more objects of decedent's charity could be taken care of by farming them out in private families, or by putting them into some institution where the overhead is already provided for, than by reconditioning and furnishing the building in question, and running it as a separate institution. The church claims that the modern tendency is to place these dependents in homes, rather than to herd them together in some institution. So the church says that conditions have arisen since this trust was created, which the donor did not have in mind when he made his will, which makes it impracticable to follow literally his directions, and that, under these circumstances, the court has the power to make an order directing that the gift be administered in such a manner as, in the judgment of the court, will most effectually accomplish the general purpose of the trust.

The church insists that the general purpose of the trust was the establishment of a home for destitute and worthy women as a memorial for decedent's mother, and that the exact location of the house was of secondary importance. Appellants, on the other hand, contend that decedent desired that his old home, situated on a prominent corner in the village of Mt. Morris, where it might be seen by every passerby, should be used as an old ladies' home, and that the building itself should stand as a monument to his mother, and that it was a matter of minor consideration whether the gift resulted in taking care of many or only a few old women.

In other words, appellants claim that the visible monument in the shape of the old homestead was paramount in the donor's mind, rather than the charitable feature of the gift. If that is so, the purpose of the trust would be a private or selfish one, and not a charitable or benevolent one.

That decedent, in making this gift, was moved by a desire to promote the happiness and welfare of indigent, worthy, Protestant women of his native village, and that his purpose was a benevolent and charitable one, unstained by personal or selfish considerations, is apparent from a careful reading of the will. At the outset decedent provides for the gift to the trustee; then follows the purpose for which it is made, namely, to provide for the establishment of an old ladies' home in memory of his mother; he then authorizes and empowers the vestry of the church to provide such home for "Protestant, worthy, indigent females in the village of Mount Morris;" then he sets apart the Swan homestead for that purpose; he then provides for the support and maintenance of the inmates of the home out of the use, interest and income of his property, and decrees that the admission of applicants be regulated by such reasonable rules as may be promulgated by the vestry of the church. Undoubtedly the testator thought, when he made his will, that his old homestead would be a suitable building in which to house this home. That is apparent from both the fifth and sixth provisions of the instrument. In the latter paragraph the testator authorizes his executors to sell his real estate, except the Swan homestead. As I read the fifth paragraph of the will, the supreme and paramount idea in the mind of decedent was to create a memorial to the memory of his mother in the shape of a charity which would furnish a home for worthy, destitute women of his native village, and that the location of that home was a secondary matter. It was especially appropriate that the house where he was born should be used for that purpose, if that could be done to advantage. But conditions have changed since this will was drawn. Could it be argued that the trust would have failed if, the day after decedent died, the old home had been burned to the ground?

Of course, testator's wishes should be respected and carried out so far as possible, but a sensible and businesslike view must be taken of these matters. While a court of equity should be slow to disregard the directions or wishes of the founder of a trust, or to substitute a different scheme for the one prescribed by him, it should nevertheless have in mind what the donor would want done in view of changed conditions, and if it is clearly established that it is impractical to carry into effect the specific directions of the donor, but that the fund can be applied beneficially to

similar purposes by different means, the *cy pres* rule should be enforced.

In *Matter of MacDowell* (217 N. Y. 454) the testatrix gave to her executor and trustee a fund to be invested, the income of which was to be expended for hiring and maintaining a house " to be used as a home for refined, educated, Protestant gentlewomen whose means are small and whose home is made unhappy by having to live with relatives who think them in the way." It was held that the general charitable design of the testatrix was that " refined, educated, Protestant gentlewomen " should be the object of her bounty, and that, if the money she directed to be devoted to that purpose was inadequate to carry out her purpose in the precise manner contemplated, that fact furnished no reason why the class that she intended to aid should not receive the benefit of the assistance which it was her intention to give, and that the court would apply the *cy pres* doctrine. That case would seem to be ample authority to sustain the order here under review.

In *Trustees of Sailors' Snug Harbor* v. *Carmody* (211 N. Y. 286) it was held that the Supreme Court, under section 12 of the Personal Property Law and section 113 of the Real Property Law, had authority to make a decree directing the trustees to administer their trust in such a manner as would more effectively accomplish the intention of the testator than by following the literal direction of the will.

Appellants rely largely upon the case of *Saltsman* v. *Greene* (136 Misc. 497; affd., without opinion, 231 App. Div. 781; 256 N. Y. 636), where the court refused to apply the *cy pres* doctrine as embodied in subdivision 2 of section 12 of the Personal Property Law. In that case the testator created a trust, and directed that the income should be expended in repairing and beautifying the buildings and grounds of the Virgil Baptist church. Virgil is a small hamlet, and the Baptist church, for want of support, was finally compelled to close its doors. Its assets were taken over by the Baptist Missionary Convention of the State of New York, and the convention claimed that the will should be so construed that it should be made the beneficiary under the will by virtue of the *cy pres* doctrine. Inasmuch as the Virgil church had ceased to exist, and as there was nothing in the will to indicate that the testator intended that the money should be used for any purpose other than the one specified in the will, the court refused to apply the *cy pres* doctrine. The trust had absolutely failed. Not so here.

I have, therefore, reached the conclusion that the court properly applied the *cy pres* rule to the facts as disclosed by this record.

The claim of the appellants that they are entitled to the corpus of this trust fund because the conditions of the gift have not been

carried out as specified by the donor cannot be upheld. Even if we were to assume that the trustee had committed a breach of its trust, or had misapplied the funds in its hands, the property would not revert to the heirs or legal representatives of decedent in the absence of an express condition to that effect in the will itself, and no such provision is found here. (*Associate Alumni* v. *Theological Seminary*, 163 N. Y. 417, 422; *Stewart* v. *Franchetti*, 167 App. Div. 541, 547.)

Neither can the appellants lay just claim to said property by reason of the provisions contained in the judgment in the Kelly case. As before pointed out, the judgment in that action provided that, if St. John's Church renounced or refused to accept the residuary devise and bequest in trust, Mr. Swan should be adjudged to have died intestate as to said residuary estate. But the church has never refused to accept the gift; on the contrary, it has filed a written acceptance of the bequest, and is now acting as trustee. True, the church claims that it is impracticable to follow literally the directions of the donor, and has, under the authority given by the statute, been granted leave to administer the trust in such a manner as the court deemed most effectual to accomplish the general purpose of the founder, but the church has never refused to carry out the trust in the identical form prescribed by the testator, if the Supreme Court refused to permit a modification of the conditions under which the gift was made. This modification, which has been granted by the court, does not change or alter the acceptance of the trust by the respondent.

If there is no reverter here, the appellants are certainly not necessary parties to this proceeding. The legal title to the trust property was vested in the trustee. (Real Prop. Law, § 113, subd. 1; Pers. Prop. Law, § 12, subd. 1.)

For the reasons above stated, I have reached the conclusion that the order appealed from should be affirmed, with costs.

All concur.

Order affirmed, with costs to the respondent payable out of the trust fund.