In the Matter of the Estate of FLORENCE B. HARRINGTON, Deceased.

ROME HOSPITAL and MURPHY MEMORIAL HOSPITAL and Another, Appellants; GEORGE E. BACON, Administrator, etc., of FLORENCE B. HARRINGTON, Deceased, Respondent.

Fourth Department, January 9, 1935.

*William Hughes*, for the appellants.

*Michael J. Larkin*, for the respondent.

CROSBY, J.   This proceeding was started in the Surrogate's Court of Oneida county to have the sixth and eighth paragraphs of decedent's will judicially construed.   The sixth paragraph is the important one to consider, as the eighth merely disposes of the residuum which includes any lapsed legacies.

The sixth paragraph gives to decedent's niece, Nellie M. Bacon, the life use of certain real and personal property, and the remainder (converted into money) at her death, " to the Rome Hospital and the managers and trustees thereof by whatsoever name known in trust however to build with said monies and proceeds an annex or addition to said Rome Hospital building in memory of my late husband George A. Harrington *and for no other use or purpose* said annex or addition to be known as the ' Harrington Annex ' or ' Harrington Addition.' "   (Italics mine.)

It is undisputed that the " Rome Hospital " (the one mentioned in the will, not the appellant, which is a different legal entity) was a charitable institution incorporated in 1884 under the act of 1848 (Chap. 319) " for the incorporation of benevolent, charitable, scientific and missionary societies."   It was operated as a charitable institution until January 1, 1929, when, for the annual rental of one dollar, and upon certain conditions and covenants, all the real and personal property was leased to the city of Rome, for two years, with renewal privileges.

The lease gave the city, during the continuance of the lease, on certain conditions, the privilege of purchasing the leased property " at the nominal consideration of One Dollar." The lease also provided that the lessor reserved the right of " inspection and visitation," and the right to have one member of its " Board of Managers " on the city board having control of the hospital.

The lease continued until, by a deed dated December 11, 1930, the lessor, for a consideration of one dollar, deeded the property to the city of Rome. The deed contained a provision " that the premises hereby conveyed shall either be maintained forever by the City of Rome as a municipal hospital, or if sold, the proceeds of the sale shall be used for the establishment of another municipal hospital *and for no other purpose.* The said hospital or its substitutes shall bear the name ' Rome Hospital and Murphy Memorial Hospital.' "

Since that time the appellant, city of Rome, has operated the property, in connection with the Murphy Hospital, as a single municipal hospital.

Decedent's will is dated in 1901; she died in 1903, and the residuary legatee, Nellie M. Bacon, qualified as one of the executors. Nellie M. Bacon (residuary legatee and life tenant under paragraph sixth) died in 1932, and the respondent George E. Bacon is the sole beneficiary under her will.

Only one other fact need be mentioned before discussing the questions of law involved: The Rome Hospital (the original charitable institution) has never been dissolved. It has never operated a hospital since it deeded its property to the city of Rome, but continues to exist for the purpose of administering certain trust funds which it has received as gifts, legacies, etc. Its deed to the city of Rome was given pursuant to a court order.

Appellant, city of Rome, contends that the gift in question is one (1) showing a general charitable intent, (2) which can be literally carried out, or (3) if not capable of literal execution can be made to serve the charitable end which testatrix had in mind by the application of the *cy pres* doctrine.

Respondent Bacon disputes all of appellants' claims, and asserts that to give the $3,000 or $3,500 at stake to the city of Rome would serve only to ameliorate the tax burden of the property owners of the city of Rome without furthering the charitable ends which the testatrix had in mind.

The surrogate has held that the gift to the (original) " Rome Hospital and the managers and trustees thereof by whatsoever name known," etc., lapsed, and we gather from the decree and opinion of the surrogate that it was thought that there was a

lapsing of the legacy because it expressed no general charitable purpose such as would prompt the court to apply the *cy pres* doctrine if possible. Primarily the gift was to an institution charitable by the very terms of its charter, and its work was one of the highest types of charities. We do not believe that the provision that the gift was to be devoted to a " building in memory of my late husband * * * and for no other use or purpose * * * to be known as the ' Harrington Annex,' " etc., militates, in the slightest degree, against the charitable character of the gift. Many, perhaps most, charities are prompted by the desire to erect a monument to the memory of the donor or some one whom the donor wishes to honor.

" The mere fact that the gift is intended as a memorial does not affect its public character." (*Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462, 469.)

Then how did the legacy lapse? " A lapsed legacy is one which has never vested or taken effect." (*Booth* v. *Baptist Church*, 126 N. Y. 215, 242.) And where a legacy has legally lapsed, the doctrine of *cy pres* cannot be invoked to save the gift. This doctrine is laid down in cases where the gift is to a charitable institution which never existed, has ceased to exist or has not legal capacity to take the gift. (*Mount* v. *Tuttle*, 183 N. Y. 358; *Ely* v. *Megie*, 219 id. 112; *Wright* v. *Wright*, 225 id. 329.)

But the will, in the instant case, took effect in 1903, at the date of the death of testatrix. The Rome Hospital was then in existence, and, as a legal entity, is still in existence, and then was, and still is, legally capable of accepting this gift. It functioned as a hospital until 1929. Indeed it still performs some of the functions of a hospital, the business for which it was created. The corporation still administers certain trust funds, as the record shows. So the legacy never lapsed. The remainder of the gift in question, after the life estate was carved out, vested in the Rome Hospital, the charitable corporation, which is still in existence and still capable of administering the trust. The very real estate which it formerly owned is now being used as a hospital. What difference that it has changed hands and is now operated by the city of Rome? It is said, in answer to the question, that the city of Rome may use the money to pay nurses or buy drugs and thus defeat the whole aim of the testatrix, both in its memorial and in its charitable features, and that the only purpose that the gift will serve is to relieve the taxpayer's burden. I see only this one impediment in the way of carrying out the purposes of this charitable gift. It is the impediment that must always exist, whenever it is sought to attach a charitable gift to someone's

property other than the testator's. If I choose to provide for the creation of a college or hospital, and make a valid will to that end, that is no one's business but the court's to see that the plan is carried out. But if I provide by will for annexing a library to someone else's college or a sun parlor to someone else's hospital, my plan may be met with objection from the incidental donee. The owner of property designed to be incidentally benefited by a charitable gift may renounce the gift so far as he is concerned, and no one can make him accept it. If the city of Rome, the present owner of the hospital building in question, does not want an annex or addition substantially as testatrix intended it, it need not have it. But, if it is willing to accept it, no reason is apparent why the wishes of testatrix cannot be substantially carried out.

Confusion seems to have been created by the thought that the money would be handed to the city of Rome to do with as it pleases. This is an erroneous notion. The trustees of the original Rome Hospital are charged with the duty of seeing that the Harrington Annex is added to the hospital, and they are entitled to the guidance, and subject to the approval of the court (either Supreme Court or Surrogate's Court, under section 12 of the Personal Property Law) in carrying out that duty.

If the present owner of the hospital building in question, the city of Rome, does not wish, or will not permit, an " annex " or " addition " to its building, substantially as provided for in the will of testatrix, it cannot be forced to have it, but it may not then claim the money for use in a manner not contemplated by the will. Nor can the beneficiary of Nellie M. Bacon's will claim the money if a way can be found to carry out the charitable aim of testatrix, for the legacy has never lapsed.

The decree herein should be reversed and the matter remitted to the Surrogate's Court to proceed in accordance with this opinion. This being a proceeding to construe the will, a decree herein has only the effect of a declaratory judgment. A further proceeding, either in Supreme Court or Surrogate's Court, may hereafter be had to apply the *cy pres* doctrine, and, in that proceeding, with the proper parties in court, the court may direct the trustees of the original Rome Hospital in the carrying out of a plan to use the legacy in a manner substantially carrying out the benevolent aim of the testatrix. Costs out of the fund should be allowed to appellants.

All concur. Present — SEARS, P. J., TAYLOR, THOMPSON, CROSBY and LEWIS, JJ.

Decree reversed on the law and matter remitted to the Surrogate's Court for further proceedings in accordance with the opinion, with one bill of costs to the appellants payable out of the fund.