In the Matter of the Application of Lewis Nixon, Sr., and Others, as Executors, etc., of Emma T. Gary, Deceased, for a Determination as to the Validity, Construction or Effect of the Disposition of Property Contained in Such Will.*

Elma L. Quirin, as Limited Ancillary Executrix, etc., of Eliza Collier Brundage, Also Known as Eliza J. Brundage, Deceased, Appellant; Lewis Nixon, Sr., and Others, as Executors, etc., of Emma T. Gary, Deceased, and Others, Respondents.

First Department, May 29, 1936.

* Affg. 161 Misc. 351.

*Herbert L. Satterlee* of counsel [*James J. Irwin, Jr.,* and *Thomas F. Compton* with him on the brief; *Satterlee & Canfield,* attorneys], for the appellant.

*John M. Harlan* of counsel [*Vincent R. Smalley* with him on the brief; *DeForest, Cullom & Elder,* attorneys; *Root, Clark, Buckner & Ballantine* of counsel], for the respondent Metropolitan Museum of Art.

*William M. Parke* of counsel [*George W. Whiteside* and *Jule E. Stocker* with him on the brief; *Chadbourne, Stanchfield & Levy,* attorneys], for the respondents Lewis Nixon, Sr., Louis S. Levy and Paul M. Hahn, as executors, etc., of Emma T. Gary, deceased.

*Thomas A. McGrath* of counsel, for respondents John W. Kiser, as general guardian of John W. Kiser, Jr., and Stanhope Wood Nixon, as general guardian of Lewis Nixon, 3d.

*Richard N. Crockett* of counsel [*Francis Smyth* with him on the brief; *Cadwalader, Wickersham & Taft,* attorneys], for the Samaritan Home for the Aged of the City of New York, respondent.

*Robert P. Beyer, Assistant Attorney-General,* of counsel, for the respondent John J. Bennett, Jr., Attorney-General of the State of New York.

PER CURIAM. We are of opinion that under the *cy-pres* power conferred upon the surrogate by section 12, subdivision 2, of the Personal Property Law he had authority to modify the terms upon which the bequest to the Metropolitan Museum of Art was made when it appeared that compliance therewith had become " impracticable or impossible " of literal fulfilment. (*Matter of Judd,* 242 App. Div. 389; affd., 270 N. Y. 516; *Matter of Swan* [*St. John's Church of Mt. Morris, N. Y.*], 237 App. Div. 454; affd., 263 N. Y. 638; compare, also, *Matter of Harrington,* 243 App. Div. 235.) The *cy-pres* doctrine has been held to apply even where a trust in the technical sense is not created, but where, as here, there is a gift or bequest to a charitable corporation. (*Sherman* v. *Richmond Hose Co.,* 230 N. Y. 462.) The application of the *cy-pres* doctrine necessarily assumes that the literal terms of the bequest or trust will not, because they cannot, be fully executed.

It is not decisive, therefore, that the disposition which has been made by the surrogate will result in a deviation from the terms of the bequest, if, as we believe, the general charitable intention of the testatrix is carried out. We think that intention

has, so far as possible, been made effective by the decree of the surrogate, which results in the exhibition of so much of the bequest as can be saved, under the name of the testatrix in the Metropolitan Museum of Art.

Accordingly we hold that the surrogate had power to apply the *cy-pres* doctrine and, if that be so, then the next of kin of the testatrix are not aggrieved by the manner of its exercise, to which all the parties who could have objected, including the Attorney-General as the representative of the public, have consented.

The decree should be affirmed, with costs payable out of the fund.

TOWNLEY, UNTERMYER, DORE and COHN, JJ., concur; MARTIN, P. J., dissents and votes for modification.

MARTIN, P. J. (dissenting). Emma T. Gary died in April, 1934, leaving a last will and testament which has been duly admitted to probate by the Surrogate's Court of New York county. The twenty-first article of the will reads as follows:

" *Twenty-first.* I give and bequeath to the Metropolitan Museum of Art in the City of New York my rare Sevres apple green china dinner service; all my jewels and jewelry; all of my laces and embroideries; the portrait of my deceased husband, Elbert H. Gary, by Hubert Vos; my painting of a ball scene by Madrazo; my painting of a woman by Henner; and my painting of a baby by Chase.

" The foregoing bequest is made upon the following conditions:

" That the foregoing articles be placed on exhibition in the Metropolitan Museum of Art, the room or rooms in which said articles are to be exhibited and the location of said articles in said room or rooms to be approved by my Executors; that there be a suitable notice accompanying such articles and describing them as my bequests or gifts; that said articles shall be exhibited perpetually and shall not be sold or otherwise disposed of; and that within three (3) months after the probate of my Will, the Metropolitan Museum of Art shall execute an agreement with my Executors accepting this bequest on the aforesaid conditions and agreeing to comply therewith.

" In the event that the said Metropolitan Museum of Art shall not accept this bequest on the aforesaid conditions, or in the event that said Metropolitan Museum of Art, after having accepted said conditions, shall, in the judgment of my Executors, violate the same, this bequest shall be forfeited by the Metropolitan Museum of Art and shall revert to my Executors, who shall thereupon offer this bequest to the City of Philadelphia Commissioners

of Fairmount Park (for exhibition in the Philadelphia Art Museum), and to the Trustees of the M. H. DeYoung Memorial Museum, of San Francisco, in the order named, and upon the same conditions; and in such event I give and bequeath said articles to that one of said two last-named institutions which shall first accept this bequest upon the aforesaid conditions.

" I direct that the judgment of my Executors as to what constitutes acceptance of the aforesaid conditions by any of said institutions, or as to what constitutes compliance therewith or violation thereof, shall be final, conclusive and binding on all parties in interest; hereby vesting in them full and complete discretion to determine whether the terms of this bequest have been complied with and whether or not to declare a forfeiture thereof."

The will also gave the residue of the estate to the institution accepting the bequest provided for in the twenty-first article, and the clause disposing of the residue states: " It is my desire that this bequest of my residuary estate shall be set aside as an endowment fund to be known as the ' Emma T. Gary Fund,' and that said fund shall be used, to the extent that it may be necessary, for the maintenance of my bequest under Article Twenty-first hereof, and the surplus thereof employed for the general corporate purposes of the Museum in which said articles shall be exhibited."

Had Mrs. Gary died on the day she executed this will her net residuary estate would have exceeded the sum of $358,000. At the time of her death the condition of the estate was such that, if the items mentioned in article twenty-first are delivered in kind, there will remain a sum equal to approximately only fifty per cent of the total of the general legacies and there will be no residue.

In the absence of a fund necessary to meet the expense of the display of the items specifically bequeathed and aside from any question of the museum value of the property, no one of the museums named was willing to accept the bequest on the conditions set forth in the will. The Metropolitan Museum submitted a proposal, the material part of which is as follows: " The Museum is ready to accept the specific bequest, provided the jewelry is excepted from the bequest and sold by the Executors so as to provide a fund from which the general legacies can be paid and from which a residue can be realized which will pass to the Museum and assist in maintaining the exhibition of the articles received by the Museum under Mrs. Gary's will, and provided that the Museum is not required to place on exhibition those articles which you and the Trustees of the Museum agree are unsuited for the purposes of public exhibition."

The executors say that, in the exercise of the discretion conferred upon them by the will, they determined that the Metropolitan Museum had accepted in accordance with the will and they then applied to the Surrogate's Court for confirmation of this determination. The surrogate ratified and approved the action of the executors, holding that under the sweeping and comprehensive grant of power contained in the will their judgment was final, conclusive and binding on all parties and, furthermore, that their action merited ratification and confirmation under the *cy-pres* powers of the court.

The language employed by the decedent conferred upon the executors the fullest possible power and authority to determine what should constitute acceptance of the conditions mentioned in article twenty-first. The exercise of such power must, however, be consonant with the purpose expressed. Broad and strong as the language is, it is confined to a determination of compliance with or acceptance of the conditions imposed by the testatrix; it does not justify substitution of new conditions in the place of those named, so as to amount to a frustration of the expressed intention of the decedent.

Where a general charitable intention appears and it is impossible or undesirable to carry out the donor's intention literally, the *cy-pres* doctrine may be applied. Lord ELDON expressed that thought in *Moggridge* v. *Thackwell* (7 Ves. Jr. 36, at p. 82) in the following language: " All the cases prove, that, where the substantial intention is charity, though the mode, by which it is to be executed, fails by accident or other circumstances, the court will find some means of effectuating that general intention." Before resort is had to this doctrine, however, it must be clear that the instrument creating the gift manifests a paramount intention of charity. So far as it is applicable here, the doctrine is one of construction. If an intention contrary to a general charitable disposition appears, the rule must yield to the expressed intention, which may be found in the language governing the gift. In *Matter of Wilson, Twentyman* v. *Simpson* (L. R. [1913] 1 Ch. 314) it was said:

" For the purpose of this case I think the authorities must be divided into two classes. First of all, we have a class of cases where, in form, the gift is given for a particular charitable purpose, but it is possible, taking the will as a whole, to say that, notwithstanding the form of the gift, the paramount intention, according to the true construction of the will, is to give the property in the first instance for a general charitable purpose rather than a particular charitable purpose, and to graft on to the general gift a direction

as to the desires or intentions of the testator as to the manner in which the general gift is to be carried into effect. In that case, though it is impossible to carry out the precise directions, on ordinary principles the gift for the general charitable purpose will remain and be perfectly good, and the court, by virtue of its administrative jurisdiction, can direct a scheme as to how it is to be carried out. In fact the will will be read as though the particular direction had not been in the will at all, but there had been simply a general direction as to the application of the fund for the general charitable purpose in question.

" Then there is the second class of cases, where, on the true construction of the will, no such paramount general intention can be inferred, and where the gift, being in form a particular gift,— a gift for a particular purpose — and it being impossible to carry out that particular purpose, the whole gift is held to fail. In my opinion, the question whether a particular case falls within one of those classes of cases or within the other is simply a question of the construction of a particular instrument."

The *cy-pres* doctrine proceeds upon the principle that it is the duty of the court to give effect to the general intention of the testator. Care must be taken, however, that a new will is not written for the testator.

The will under review so clearly defines the object of the gift as to leave no doubt that the testatrix had in mind a single, particular purpose, that is, the retention and perpetual exhibition of the items enumerated in article twenty-first, which can be carried into effect only in the manner indicated. This conclusion is supported by the following facts: The bequest is made upon a condition precedent; the enumerated property is to be employed in one way forever — it is to be exhibited perpetually and not sold; in the event that the first named museum did not accept, two alternative beneficiaries were named; a limited time was fixed within which acceptance was to be evidenced and in the event of the failure to comply with the conditions the property was to revert, the executors being empowered to declare a forfeiture. No general intent, charitable or otherwise, is manifested. It is true that the residuary clause allows the accepting museum to use any surplus for its general corporate purposes, but this was solely in the event that a surplus remained after the cost of maintenance of the primary object had been defrayed from the fund.

It is urged that under the proposal of the Metropolitan Museum of Art all the articles enumerated, except the jewelry, will be preserved and exhibited in the manner in which the decedent wished and in the museum which she preferred. The jewelry

represents about nine-tenths of the value of the property involved. Should that be disposed of, the necessity for a maintenance fund would be practically eliminated. The testimony of one of the executors shows that the decedent was very proud of her jewelry and deemed it of considerable public interest. In order to hold that a disposal of the jewelry by sale is a compliance with the conditions mentioned in the will, it is necessary to disregard the express language that said articles " shall not be sold or otherwise disposed of."

The power conferred upon the executors does not permit them to defeat the wishes of the testatrix. The testimony offered on behalf of the Metropolitan Museum is that the jewelry has no value for museum purposes and it proposes that the jewelry be sold and expresses its willingness to take the proceeds. It was not the intent of the testatrix that her jewelry be sold and the proceeds turned over to the museum.

We conclude, therefore, that the proposal of the Metropolitan Museum of Art of the City of New York cannot be deemed a compliance with the conditions of the will and, as such, may not be accepted by the executors.

The decree appealed from should be modified and the matter remitted to the Surrogate's Court.

Decree affirmed, with costs payable out of the fund.