292

In the Matter of the Judicial Settlement of the Final Account of Proceedings of John M. Lyon, as Trustee under the Last Will and Testament of Daniel E. Merritt, Deceased.

Alice S. Leal and Howard M. Banks, as an Administrator, etc., of Emma E. Merritt, Deceased, Appellants; John M. Lyon, as Trustee, etc., of Daniel E. Merritt, Deceased, John Haviland Smith, Individually and as Administrator, etc., of Emma E. Merritt, Deceased, William B. Banister, as Mayor of the Village of Port Chester, New York Congregational Conference, Inc., as Successor and Transferee of All the Property, Assets and Effects of First Congregational Church in the Village of Port Chester, Dissolved, John J. Bennett, Jr., Attorney-General of the State of New York, The People of the State of New York, W. Chantler Arbuckle, Special Guardian for All Unknown Heirs and Next of Kin, etc., and Port Chester Public Library, Respondents.

Second Department, May 27, 1938.

*C. Joseph Danahy* [*John F. X. Sheridan* with him on the brief], for the appellant Alice S. Leal.

*Woolsey A. Shepard* [*Daniel J. Clifford* with him on the brief], for the appellant Howard M. Banks, individually and as an administrator, etc., of Emma E. Merritt, deceased.

*Arthur R. Wilcox,* for the respondent John M. Lyon, as trustee, etc., of Daniel E. Merritt, deceased.

*Robert P. Beyer, Assistant Attorney-General* [*John J. Bennett, Jr., Attorney-General,* with him on the brief], for the respondent Attorney-General of the State of New York on behalf of the respondent The People of the State of New York and as statutory representative of the unknown beneficiaries of the trust created under the last will and testament of Daniel E. Merritt, deceased.

JOHNSTON, J.  Daniel E. Merritt and his sister Emma lived on a farm in the towns of Harrison and Rye, Westchester county.  On May 22, 1914, Daniel died, leaving Emma as his sole heir at law. By his will he devised his estate, including the farm, to his executors in trust to apply the net income to the support of Emma during her life.  Upon Emma's death the executors were directed to pay the corpus of the estate, together with all accumulations, to a board of trustees, consisting of the president of the village of Port Chester and the senior pastors of certain churches in that village.  The trustees were directed to hold the property in trust and to apply the net income to the following purposes: (1) To lay out and build upon the Merritt farm a public cemetery to be known as The Merritt Public Cemetery " for the purpose of providing plots or places wherein the people of the Village of Port Chester and vicinity may be buried without charge as soon as they, my said charity trustees, or a majority of them shall see fit;" and (2) thereafter to apply the income forever " for the support of said public cemetery and keeping the same in as good condition as the income thereof may permit, and if necessary, build one or more vaults therein and thereupon, but to keep however, a small burial plot wherein my father and mother and other relatives are buried in a good state of repair and condition and not permit the same to be in any manner disturbed or interfered with."

The will also provides: " It is my intention that the institution hereby created shall be perpetual; " that the board of trustees named and their successors should forever be the governors and superintend the same, and " that if it cannot legally be done, according to my above intentions, by them, without an Act of the Legislature, it is my will and desire that they will as soon as possible apply for an Act of the Legislature to incorporate them, for the purpose

above specified." The will further provides "that the said rest, residue and remainder of my estate should be in all events applied for the uses and purposes above set forth. And it is my desire that all Courts of Law and Equity will so construe this my said will as to have the said estate apportioned to the said uses and that the same should in no case for want of legal form or otherwise, be so construed, that my relations or any other persons should have, possess, or enjoy my property, except in the manner and for the uses and purposes hereinabove specified."

On June 3, 1914, a few weeks after Daniel's death, Emma was adjudged incompetent and a committee appointed. The committee commenced a series of actions against Daniel's estate to set aside various conveyances and assignments made by Emma to Daniel, on the ground that they were procured by fraud and that at the time the transfers were made Emma was incompetent. These transfers included the farm and comprised the bulk of Daniel's estate. The actions resulted in a judgment decreeing that the farm belonged to Emma, and in reducing Daniel's net estate to approximately $12,000.

In 1916 and during Emma's lifetime, John M. Lyon, as executor of Daniel's estate, presented his final account for settlement and asked for a judicial construction of the will. Surrogate SAWYER held a valid charitable trust was created. On appeal this court, while intimating, in view of the fragment of property left, it was doubtful that the testator's general purpose could be effectuated by invoking the *cy pres* doctrine, held that the determination of the question was premature and would have to await Emma's death, if decision then be deemed necessary or advisable. (*Matter of Lyon*, 173 App. Div. 473.)

We are now required to decide if the trust is valid. Emma died in 1936. John M. Lyon, as trustee of Daniel's estate, presented his final account for settlement and asked for a judicial construction of the trust provisions of the will. The acting surrogate, applying the *cy pres* doctrine, held a valid charitable trust was created and that the residue, together with the accumulations, should be paid over to the charity trustees "for the purpose of purchasing in some convenient non-sectarian cemetery, a burial plot, as extensive in dimensions as the fund will permit, and for the purpose of providing for maintenance thereof, such plot to be used for the purpose of providing free burial accommodations for such of the people of the village of Port Chester and vicinity as may be accommodated therein." One of the administrators of Emma's estate and one of Daniel's next of kin appeal. They contend that, in view of the

fact that the farm is not available for cemetery purposes and of the substantial reduction in the residue of the estate, the *cy pres* doctrine is inapplicable and that the trust must fail. With this contention I do not agree.

Under the Tilden Act (Laws of 1893, chap. 701; Pers. Prop. Law, § 12; Real Prop. Law, § 113) and the *cy pres* doctrine, it is incumbent upon the courts to strive to enforce as far as possible a charitable bequest or trust regardless of any deficiencies of the form in which it is made or of any practical difficulties which render impossible strict compliance with the terms of the gift, provided only that in so doing the courts effectuate the essential or dominant charitable intention of the testator. In other words, when a testator " parts with his property absolutely for a charitable purpose, such property shall be forever devoted to a charitable purpose, whether or not the particular charity for which the property may be donated shall exist when the trust becomes operative, and in case the same does not exist, the property may be devoted under the direction of the Court of Chancery to a kindred charity, *cy-pres*, that is, as near as may be, to the charity contemplated by the donor," the idea being " that property once devoted to charity shall forever be devoted to charity." (*Sherman* v. *Richmond Hose Co., No. 2,* 186 App. Div. 417, 423; affd., 230 N. Y. 462.)

It may be said that whenever the terms or conditions of a gift for a charitable purpose cannot be satisfied, the *cy pres* doctrine will be invoked to save the gift for charity so long as the essential and dominant purpose of the settlor or testator may be fulfilled. (*City Bank Farmers Trust Co.* v. *Arnold,* 268 N. Y. 297, 305; *Unger* v. *Loewy,* 236 id. 73, 79; *Matter of Gary,* 248 App. Div. 373; affd., 272 N. Y. 635; *Matter of Swan,* 237 App. Div. 454; affd., *sub nom. Matter of St. John's Church of Mt. Morris,* 263 N. Y. 638.) In the application of the *cy pres* doctrine to a charitable trust, the courts take a most liberal and practical view in order to sustain the trust. (*Matter of Durbrow,* 245 N. Y. 469; *City Bank Farmers Trust Co.* v. *Bennett,* 159 Misc. 779, 787, 788; *Matter of Hall,* 156 id. 841; affd., 247 App. Div. 719; affd., 272 N. Y. 428.)

Reading testator's will as a whole, it appears that while he was desirous of subjecting the Merritt farm to the public cemetery use, his dominant purpose was to provide a place " wherein the people of the Village of Port Chester and vicinity may be buried without charge," and that the place of burial was of secondary importance to him. As the testator's charitable purpose is clear, the court should strive to make it effectual. (*Matter of Durbrow,* 245 N. Y. 469, 474.)

The fact that the farm is not available because testator never owned it, or that the residue of testator's estate has been substantially reduced, does not, as urged by appellants, defeat the trust even though the extent to which it may be fulfilled is meagre in contrast with the charity originally contemplated. The testator's charitable intentions are not to be rendered abortive simply because, through events or circumstances which he overlooked or failed to foresee or which were beyond his control, the scope of his generosity must be substantially diminished. Just as a charitable trust will be upheld even though the amount provided proves to be disproportionately large for the purpose intended (*Matter of Morris*, 227 N. Y. 141), so a charitable trust may be sustained by the application of the *cy pres* doctrine even though the amount available is disproportionately small for the purpose specified.

Testator's will is not dissimilar to the will involved in *Matter of Swan (supra)*. There the testator directed that the residue of his estate be used to provide for the establishment of a home to be known as the Swan Memorial Home " for Protestant, worthy, indigent females in the village of Mount Morris, and to set apart for that purpose the Swan Homestead " and to maintain it out of the income of the residue. The trustee, claiming that circumstances had so changed since the execution of the will as to render " impracticable and infeasible " the use of the Swan homestead, applied for an order to permit him to administer the trust free from the limitation requiring the use of the homestead and to direct that the income be expended for the support and maintenance of Protestant, worthy, indigent females in private or institutional homes. Testator's heirs urged that the gift was forfeited unless the condition upon which it was made, namely, the use of the Swan homestead, was observed, since the use of the homestead was so intimately connected with the creation and maintenance of the trust that the *cy pres* doctrine may not be invoked to eliminate its use and to permit the funds to be employed in a manner different from that directed by the testator. It was contended that the testator's principal desire was that his old homestead should be utilized and that it should stand as a monument or memorial to perpetuate his mother's name. The trustee argued that the paramount purpose of the trust was the establishment of a home for destitute and worthy Protestant women and that the location of the home was of minor consequence. The court, invoking the *cy pres* doctrine, accepted the trustee's view.

As already stated, Emma, by the terms of the will, was entitled during her life to the income of the trust. Her committee refused to accept this income. As a result the income has accumulated

and the residue has increased to approximately $21,000. The administrator of Emma's estate claims that, regardless of the validity of the trust, the accumulations should go to Emma's heirs and next of kin. Testator's next of kin, on the assumption that the trust is invalid, claims that the accumulations as well as the principal should go to testator's heirs and next of kin. In my opinion neither appellant is entitled to the accumulations and they should follow the principal of the trust. Emma's committee, in 1914, was confronted with two alternatives: either to take the bequest given her under the will or to attack testator's title to the property which he attempted to devise and bequeath. The committee could not do both. They wisely chose the latter. They instituted a series of actions against the testator's estate and succeeded in acquiring the greater part of the property which the testator attempted to devise and bequeath. By so doing the committee irrevocably elected to reject Emma's legacy and to take in derogation of the will. " If a testator has affected to dispose of property not his own, and has given a benefit to the person to whom that property belongs, the legatee or devisee accepting the benefit so given to him must make good the testator's attempted disposition. If he insist on retaining his own property which the testator has attempted to give to another person, equity will appropriate the gift made to him for the purpose of making satisfaction out of it to the person whom he has disappointed by the assertion of his rights." (*Beetson* v. *Stoops*, 186 N. Y. 456, 463. See, also, *Oliver* v. *Wells*, 254 id. 451.)

Here the testator assumed to dispose of property not his own and at the same time to give a benefit to Emma, to whom the property belonged. Having reclaimed her own property — which constituted the major part of the residue — it would be inequitable to permit her or her representatives to acquire a beneficial interest in the residue. They cannot destroy the gift created by the will and at the same time take under the will.

Emma's administrator also makes the labored argument that, in any event, the doctrine of equitable election is applicable only when the legatee attempts to take under the will, and here he is seeking to obtain both the corpus and the accumulation, not under the will, but by virtue of Emma's claim as sole heir and next of kin under the intestacy laws. This necessarily is based on the theory that the will as a whole is invalid and ineffectual to pass title to any part of the residue. But both the will and the trust being valid, whatever of testator's property Emma was entitled to receive she could receive under the will only. Having, through her committee, elected to attack and destroy testator's title to most of the

property which the latter sought to devise and bequeath, and having thus secured the property in derogation of the will, her administrator is now precluded from taking under the will.

The decree settling the final account of the trustee should be affirmed, with costs, payable out of the estate of Daniel E. Merritt, deceased, to all parties filing briefs.

Present — LAZANSKY, P. J., HAGARTY, DAVIS, JOHNSTON and TAYLOR, JJ.

Decree of the Surrogate's Court of Westchester county, settling the final account of the trustee under the last will and testament of Daniel E. Merritt, deceased, unanimously affirmed, with costs, payable out of the estate of said Daniel E. Merritt, to all parties filing briefs.