In the Matter of the Will of MARY STUART, Deceased.

Surrogate's Court, New York County, February 11, 1944.

*George L. Shearer* and *M'Cready Sykes* for New York Public Library, Astor, Lenox and Tilden Foundations, petitioner.

*McIntyre & Van Steenbergh* for American Bible Society, respondent.

*Tanner, Sillcocks & Friend* for Presbyterian Home for Aged Women in the City of New York, respondent.

*Arthur Sutherland* for The New-York Historical Society, respondent.

*Emmet, Marvin & Martin* for Home for Incurables, respondent.

*Sullivan, Donovan & Heenahan* for New York Society for the Prevention of Cruelty to Children, respondent.

*Coombs & Wilson* for Board of Home Missions of the Presbyterian Church in the United States and others, respondents.

*Nathaniel L. Goldstein, Attorney-General* (*Corning G. McKennee* of counsel), for State of New York.

Foley, S. This is an application by the New York Public Library, Astor, Lenox and Tilden Foundations, for the construction of certain provisions of the will of the testatrix brought on pursuant to section 12 of the Personal Property Law. The testatrix died on the 30th day of December, 1891, leaving a will and three codicils thereto which were duly admitted to probate on April 5, 1892.

Two questions are presented for determination: (1) whether the terms of the will impose conditions upon a charitable gift which are permanent in nature, or (2) constitute mere regulations or directions subject to change by the application of the cy pres doctrine.

By paragraph second of the first codicil to her will the testatrix bequeathed to the Trustees of the Lenox Library, a corporation located in the city of New York, all her books, manuscripts, paintings and other works of art of every name and nature, to have and hold the same for the uses and purposes of the Lenox Library absolutely and forever, subject to certain conditions.

The paramount condition of the gift contained in the 5th subdivision of the first codicil was that the Trustees of the Lenox Library were to notify the executors in writing within ninety days after her death (subsequently changed by codicil to ninety days after probate of her will) that they would accept the bequest and comply with the conditions thereof.

The other conditions were substantially as follows: the Trustees were to catalogue, arrange and appropriately place the articles bequeathed in a separate room or compartment of the Lenox Library building, the cataloguing to be separate and distinct from other collections in the library, the catalogue to be designated as "The Robert L. Stuart Collection, the gift of his widow Mrs. Mary Stuart". In the event that no separate room could be provided for the collection, the Trustees were to erect a separate wing or extension for that purpose. The collection was to be exhibited to the public free of charge at all reasonable times, subject, however, to such rules and restrictions as the Trustees of the Lenox Library might see fit to prescribe for the protection and preservation of the property. The collection was never to be exhibited by the Trustees of the library "on the Lord's Day".

A further condition was imposed by the 6th subdivision of the second codicil which related solely to the acceptance of the gift by the Trustees of the library. Under that subdivision, if they failed or refused to accept the gift within the time and

under the terms indicated by the testatrix, the entire collection was to fall into the residuary estate and pass thereunder to the various residuary legatees.

The Trustees of the Lenox Library duly accepted the gift in accordance with its terms and proceeded to comply with the conditions of the bequest. Thereafter, the Lenox Library was consolidated with the Astor and Tilden libraries to form the present New York Public Library, Astor, Lenox and Tilden Foundations, the present petitioner. Upon such consolidation, the property constituting the Stuart Collection passed to the petitioner and was housed and exhibited in a separate room of the main building of the library on Fifth Avenue between 40th and 42nd Streets in the city of New York. The collection is not of any distinctive, artistic or literary quality, nor is it of any great value.

The petitioner now asserts that because of changed conditions, the overcrowding of the present library building due to a great increase in the volume of books since the receipt of the collection over fifty years ago, and the lack of facilities of the petitioner to properly care for the paintings and other works of art, it has become impracticable and impossible to comply literally with the conditions and restrictions of the bequest.

The petitioner states that it therefore finds it necessary to make some other disposition of the collection, excluding the books and manuscripts which it will retain in its own library, and seeks a decree of this court, under its cy pres powers, authorizing it to make a loan of the collection to The New-York Historical Society for the purpose of its exhibition by that corporation. It appears that the Society has a fireproof building specially constructed for exhibition purposes, occupying a block frontage on Central Park West from 76th Street to 77th Street in this city, and is properly equipped to care for and exhibit the collection; that it is a corporation organized to discover, procure and preserve whatever may relate to the natural, civil, literary and ecclesiastical history of the United States in general and the State of New York in particular; and that it maintains collections in art and archaeology for educational purposes. The pictures and objects of art in the Stuart Collection constitute in part a sociological and historical record of New York City in the middle and late nineteenth century. As such it is urged it is important that they be kept together and properly cared for, and it is desirable that they be housed in an institution such as The New-York Historical

Society devoted primarily to New York and its history. The New-York Historical Society has signified its willingness to accept a loan of the collection from the petitioner and to carry out the terms specified in the will of the testatrix, if it is authorized to administer the collection free of the restrictions that it shall be separately catalogued, housed in a separate room, and never exhibited on Sundays. Sunday is one of the days on which the exhibits of the society are largely patronized.

All of the residuary legatees under the will were cited in this proceeding, thirty-three in number, consisting of religious, educational and other charitable institutions. Some of the institutions have appeared and have consented to the application; others have not appeared but have indicated their consent thereto in writing. Still others have not appeared at all. The Attorney-General of the State of New York has appeared and strenuously argues in support of the application under which the charitable purposes of the testatrix will be best effectuated. No one has opposed the application except the American Bible Society. That society concedes that a literal compliance with the provisions of the will and codicil has been rendered impracticable and impossible. However, it contends that a failure to perform the condition of the gift that the collection " shall never be exhibited by the Trustees of the Lenox Library on the Lord's Day " operates as a forfeiture of the entire bequest and that the property should be distributed among the residuary legatees named in the will, of which it is one.

The contention of the American Bible Society is overruled. The acceptance of the gift by the Trustees of the Lenox Library was a condition precedent, under subdivision 5th of paragraph second of the first codicil to the will, to the delivery of the collection to them by the executors under the will. Having accepted the gift in writing and agreed to comply with the conditions as to its administration, the collection vested in the Trustees of the Library upon its receipt by them. Under the terms of the codicil a forfeiture could only result and the alternative provision for distribution of the gift among the residuary legatees could only take effect if the Trustees of the library failed in the first instance to accept the gift within the time and upon the conditions stated in the codicil. No other forfeiture was contemplated by the testatrix. The conditions as to the maintenance and administration of the gift as a public benefaction were all conditions subsequent for the performance of which the library was responsible to the people for whose

benefit the exhibition of the collection was intended. Upon a failure or refusal of the legatee to comply with the conditions and restrictions imposed upon the bequest, or if the legatee commits a breach of trust or mismanages the gift in any way, the courts have the power to see to it that the interests of the public in the trust or gift are properly safeguarded. (*Associate Alumni* v. *Theological Seminary,* 163 N. Y. 417; *Matter of Swan,* 237 App. Div. 454, affd. *sub nom. Matter of St. John's Church of Mt. Morris,* 263 N. Y. 638.) However, whenever it is shown to the court that the circumstances have so changed since the execution of an instrument containing a charitable gift, grant or use as to render impracticable or impossible a literal compliance with the terms of such instrument, the court may, upon the application of the trustee or the person or corporation having the custody of the property, make an order directing that such gift shall be administered or expended in such manner as in the judgment of the court will most effectually accomplish the general purpose of the testator, without regard to and free from any specific restriction, limitation or direction contained in the instrument. (The Tilden Act, Personal Property Law, § 12.)

The dominant purpose of the testatrix here was to make it possible for the general public to view and enjoy the books, paintings and works of art in a collection. The passage of time since the death of Mrs. Stuart in 1891 and the changed and liberalized conditions throughout this long period of over fifty years, justify, in the opinion of the Surrogate, the relaxing of the restrictions imposed as to the preservation, maintenance and exhibition of the collection and particularly the prohibition against its exhibition on Sunday. The building of The New-York Historical Society is open to the public each day of the week. In the period prior to Mrs. Stuart's death the Lenox Library and other libraries, museums and institutions having public exhibits were in most cases closed on Sundays. Today most of them, if not all, are open to the public on Sundays. It is a well-known fact that attendance at such exhibitions in the city of New York is proportionately much greater on Sunday than on any other day of the week. It is stated that it would be impracticable to find an institution with adequate facilities for housing the collection and with the needed staff of attendants to take proper care of it, that would undertake its exhibition if the exhibit had to closed on Sundays.

The Surrogate holds therefore that a literal compliance with the provisions of the will of Mrs. Stuart with respect to the

exhibition of the Stuart collection has been rendered impracticable by changes in circumstances since the execution of the will, and that the general charitable purpose of Mrs. Stuart will be most effectually accomplished by the loan of the collection to The New-York Historical Society under the terms of the tentative agreement entered into. Accordingly, under the cy pres power of the court, the Surrogate will approve the agreement and authorize the transfer of the collection from the petitioner to the society. (Personal Property Law, § 12, subd. 2; *Matter of Neher*, 279 N. Y. 370; *Matter of Gary*, 272 N. Y. 635, affg. 248 App. Div. 373, affg. 161 Misc. 351; *Matter of Swan*, 237 App. Div. 454, affd. *sub nom. Matter of St. John's Church of Mt. Morris*, 263 N. Y. 638, *supra; Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462; *Matter of MacDowell*, 217 N. Y. 454; *Trustees of Sailors' Snug Harbor* v. *Carmody*, 211 N. Y. 286; *Matter of Griffin*, 167 N. Y. 71; *Matter of Harrington*, 243 App. Div. 235; *Matter of Walter*, 150 Misc. 512.)

In *Matter of Neher* (p. 374, *supra*) the Court of Appeals pointed out that where the testatrix has indicated that her paramount intention was to make a bequest for a general charitable purpose and to graft on the gift suggested directions as to her desires of the manner in which the gift was to be carried out, such "a grafted direction may be ignored when compliance is altogether impracticable and the gift may be executed cy pres through a scheme to be framed by the court for carrying out the general charitable purpose."

"*Cy pres* applications are based, not on an arbitrary power in the court, but on a rule of construction, that gives effect to the general charitable intent of the testator despite the fact that his subsidiary intent to have the gift take effect in a particular mode has become impossible of realization." (37 Harv. L. Rev. 263.)

*Matter of Fletcher* (280 N. Y. 86) and *Matter of Price* (264 App. Div. 29, affd. 289 N. Y. 751), cited by the American Bible Society as controlling here, have no relevancy to the will or the facts here. In the former case the bequest was declared inoperative and never vested in the legatee under the terms of the will and therefore the cy pres doctrine was held not to be applicable. In the latter case the inadequacy of a trust fund for charitable purposes was not permitted to affect the validity of the trust which the court held should be carried into effect as far as possible.

Submit decree on notice construing the will and authorizing the execution of the tentative agreement between the petitioner and The New-York Historical Society accordingly.