## In the Matter of the Estate of THOMAS J. SKUSE, Deceased.

Surrogate's Court, Kings County, December 1, 1937.

*Blau & Blau* [*Alexander Roth* of counsel], for Anna M. Skuse, Joseph Mathias and Morris Blau, as executors, etc., accountants, petitioners.

*Charles J. Buchner*, special guardian for Margaret Gough, Virginia Gough and Mary Gough, infant legatees.

*Daniel A. Shirk*, for Marietta C. Keough, sister of decedent.

*John J. Bennett, Jr., Attorney-General* [*Robert P. Beyer, Assistant Attorney-General*, of counsel], as statutory representative of unknown beneficiaries.

WINGATE, S. The will presently submitted for construction contains only three sets of dispositive directions. The testator's jewelry and personal effects, with the exception of his books, are bequeathed to his wife. The books are directed to be divided among the members of the Customs Service in the Port of New York and the employees of the Atlantic Savings and Loan Association; and the remainder of the estate is erected into a trust for the life benefits of testator's wife and sister and their survivor. Upon their deaths the third item of the will gives the remainder to named trustees, in trust to apply the income " in the medical and/or surgical care of any member of the Customs Service in the Port of New York, and the employees of the Atlantic Savings and Loan Association," with a further provision that if " there remains any unexpended income in any year, I authorize same to be given to the New York *Times* fund for the 100 neediest cases."

The primary dispute is as to whether this remainder gift constitutes a valid charitable trust within the meaning of section 12 of the Personal Property Law. Those contending for invalidity assert that it is " for private purposes," and contemplates a benefit only " to individuals within a limited class."

As the court understands the argument of these parties, their position is in effect that since the gift is to a limited class it is necessarily " for private purposes," and, therefore, non-charitable.

Unquestionably popular conceptions respecting the varieties of gifts which are properly classifiable as for charity, benevolence or education are subject to change like any other human ideas. (*Matter of Frasch*, 245 N. Y. 174, 181.) It would, therefore, be a venturesome individual who would attempt to formulate a definition purporting to indicate the precise dividing line between a donation of benevolence and one involving personal gain. It may safely be asserted, however, that the mere restriction of the benefit to a particular or limited class of persons would seldom if ever be determinative of the question, so long, at least, as it contemplated the betterment of position of a general aggregate of persons of reason-

able number who, except for the charitable impulse of the testator, would not be natural objects of his bounty.

Nor, would it seem, could it be said that any clear line is capable of demarkation as to the requisite financial status of a particular recipient in order to justify the characterization of the benefit to him as charitable. " Need " is a wholly relative term, the conception of which must, within reasonable limits, vary with the personal situation of the individual employing it. Even " poor needle-women whose toil is so poorly requited " (*Manley* v. *Fiske*, 139 App. Div. 665, 666; affd., 201 N. Y. 546) might, if employed, be deemed fortunate and happy persons by one out of work and with no means of subsistence.

Trusts have been upheld as charitable whose benefits were limited to persons living in a certain locality. (*Starr* v. *Selleck*, 145 App. Div. 869, 874; affd., 205 N. Y. 545; *Matter of Miller*, 149 App. Div. 113, 125; *Matter of Rasquin*, 159 id. 845, 847), following a specified trade or occupation (*Manley* v. *Fiske*, *supra; Trustees of Sailor's Snug Harbor* v. *Carmody*, 211 N. Y. 286) or employed by a named corporation (*Matter of Westinghouse*, 156 Misc. 321, DELEHANTY, S.; affd., 248 App. Div. 568; leave to appeal denied, 272 N. Y. 678), wherefore, it would seem that a gift to any reasonably numerous aggregate of persons unrelated to the testator by blood or marriage would, of itself, usually give rise to an inference of a charitable or benevolent purpose on the part of the donor.

The total number of employees in this Customs Service in the Port of New York and the Atlantic Savings and Loan Association is a subject concerning which the court possesses no knowledge either officially or as an individual. No demonstration in regard to it has been adduced in this litigation. That the former, at least, includes many persons would appear to be a fact reasonably within the common knowledge of any moderately informed inhabitant of the city. That their rate of remuneration is modest would seem a permissible inference from the generally familiar fact that they are civil service employees in the lower brackets. There is consequently no condition pertaining to the recipients of the proposed benefit upon which to differentiate the present gift from those for the establishment and maintenance of a clubroom for young men and boys in the city of New York (*Starr* v. *Selleck*, 145 App. Div. 869; affd., 205 N. Y. 545), " a home for industrious Girls and Women " (*Matter of Daly*, 208 Penn. St. 58; 57 A. 180), " a Rest Home for Worthy Working Girls " (*Sherman* v. *Congregational Home Missionary Society*, 176 Mass. 349; 57 N. E. 702) and many similar donations which have been sustained as valid charitable or benevolent gifts.

In view of the fact that the respondents apparently place considerable reliance upon *Matter of Shattuck* (193 N. Y. 446) as a persuasive precedent in support of their position, the suspicion is generated that their conception of the requirements for validity of a charitable trust has not kept step with the tendency toward liberality which all of the more recent decisions have evidenced. In overruling the determination of the Appellate Division " that the possible devolution of the fund in whole or in part to private uses  *  *  *  makes it invalid," the Court of Appeals said, in *Matter of Durbrow* (245 N. Y. 469, 475): " This conclusion seems unsound.  It is based on *Matter of Shattuck* (193 N. Y. 446) which has been strictly confined to its own facts by later and better considered cases."

Of course, neither under the present nor the former doctrine is any gift sustainable as charitable which definitely contemplates a use for personal profit.  The difference between *Matter of Shattuck* and certain earlier cases, on the one hand, and the modern doctrine respecting the subject, on the other, lies largely in the method of approach.

Formerly, if a *possibility* of use for private gain could be discerned under the language of the will the trust was deemed invalid and non-charitable.  Now, however, the theory applied is that the " language should be construed in a broad and liberal spirit in accordance with his intention and the gift upheld, although the will may be susceptible of a construction which would permit the gift to be used for private or secular purposes," provided " a definite charitable purpose may be found within the limits of a testator's language." (*Matter of Durbrow*, 245 N. Y. 469, 474.)  In other words, although the terms of the gift are capable of two constructions, one of which would devote it to a charitable purpose and the other to possible private gain, that " construction which is fairly within the rules of law and that sustains the trust and devotes the fund included therein to purposes permitted by law and to the good of humanity should be preferred."  (*Matter of Robinson*, 203 N. Y. 380, 388. See, also, *Matter of Frasch*, 245 id. 174, 185; *Matter of Cunningham*, 206 id. 601, 607.)

Judged from this viewpoint, the purposes of the trust here under consideration are charitable.  It is, therefore, valid and is sustained.

A further question is presented as to the ownership of fifteen mortgage participation certificates, the pertinent facts respecting which are alleged in the tenth paragraph of the petition on this accounting, and are uncontroverted.  As thus stated they are as follows:  When the executors assumed official charge of the assets of the estate there was delivered to them a bundle of papers con-

taining a blank envelope on which was written in ink in the handwriting of the decedent the words "Mr. Morris Blau, personal." Mr. Blau is one of the executors. Attached thereto were fifteen unsealed envelopes each containing a mortgage certificate. On each envelope there was writing in ink in the handwriting of the decedent giving the name of some one or more individuals in all instances except one, with the addition of the words "from Thomas J. Skuse." Prior to his death the decedent had instructed two of his friends and business associates, Frederick W. Moss and Frank T. Underhill, that, in the event of his death, these securities were to be delivered to Mr. Blau immediately. The entire package of papers was kept by the decedent in the safe which he used at his place of business. He had always collected, and used for his own account, all interest payments on these certificates. No instructions were given by the decedent prior to his death to Mr. Blau concerning the disposition of these certificates, all of which were indorsed in blank.

The only party who contends that the foregoing facts demonstrate a termination of the unqualified ownership of the decedent of these securities is the special guardian for three infants who would benefit were such a determination to be made. He does not urge that a gift was consummated. Obviously, such a contention would be wholly untenable since one of the essential prerequisites to a valid gift is delivery of the subject-matter (*Leary* v. *Geller*, 224 N. Y. 56, 59; *Matter of Van Alstyne*, 207 id. 298, 308; *Vincent* v. *Rix*, 248 id. 76, 82; *Schwab* v. *Schwab*, 177 App. Div. 246, 248; *Matter of Weinberg*, 162 Misc. 867, 871), of which there is here not the remotest semblance.

The position which he adopts is that the decedent constituted himself a trustee of the securities in question for the several individuals. Whereas it is wholly true that "no particular form of words is necessary to constitute a trust" (*Martin* v. *Funk*, 75 N. Y. 134, 141), the authorities are uniform that for valid erection "there must be either an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created." (*Beaver* v. *Beaver*, 117 N. Y. 421, 428.) In other words, where reliance is placed upon acts alone, those acts must be so clear as not to be "capable of another construction, or consistent with a different intention." (*Beaver* v. *Beaver*, 117 N. Y. 421, 428; *Barry* v. *Lambert*, 98 id. 300, 306; *Young* v. *Young*, 80 id. 422, 438; *Matter of Vaughan*, 145 Misc. 332, 339.)

The actions of the decedent in the present instance fall far short of this description. Not only are they not inconsistent with a different intention, but the natural inference therefrom is that his

sole desire was to retain unconditioned ownership of the securities up to the moment of his death and then have them devolve to the individuals named. Except in respect to jointly-owned property and "Totten" trust accounts transmission of personal property on death may be effected only by will. (*Gilman* v. *McArdle*, 99 N. Y. 451, 461; *Matter of Weinberg*, 162 Misc. 867, 872.)

It must, accordingly, be determined that the attempted post mortem gift of the securities was wholly ineffectual and that they are a part of the assets of the estate.

Enter decree on notice in conformity herewith.