OPINION OF THE COURT
Evans V. Brewster, S.
In this accounting proceeding by the executrix for a judicial settlement of her acts and proceedings as executrix, the Attorney-General of the State of New York, as statutory representative of ultimate charitable beneficiaries, has also petitioned the court for a construction of article sixth of the will which would delete the word “men” contained therein and insert the word “persons” in place thereof. The executrix of decedent’s will, the Attorney-General and the Croton-Harmon Free School District have stipulated that there are no contested or controverted facts in issue and all agree to the construction to substitute the word “persons” in place of “men” in article sixth of decedent’s will. The parties also consented to the approval of the terms of the stipulation by the court.
Article sixth of the decedent’s will contains the following language: “sixth: I give, devise and bequeath my entire *1067 residuary estate to croton-harmon union free school district, the principal of which shall be invested and held for the purposes hereof, and the net income of which shall be used and applied, each year to the extent available, for scholarships or grants for bright and deserving young men who have graduated from the High School of such School District, and whose parents are financially unable to send them to college, and who shall be selected by the Board of Education of such School District with the assistance of the Principal of such High School.”
During the administration of decedent’s estate the executrix made a substantial distribution to the school district. Subsequently, in April, 1979, the board of education of the school district announced that applications would be accepted from graduating males on or before May 1, 1979 and that it would begin awarding scholarships to male students who meet the qualifications established in article sixth of decedent’s will. However, before any scholarships were awarded, the board of education became acutely aware of the danger lurking in such precipitous action. Not only did a female student of the high school district claim a right to scholarship eligibility but a complaint was also filed with the United States Office of Civil Rights of the Department of Education by the National Organization of Women, Legal Defense and Education Fund, with respect to the awarding of scholarships which were restricted to “men”. Pending the construction of article sixth, the board of education has deferred the granting of any scholarships.
The Attorney-General argues that literal compliance with the provisions of the will respecting the granting of scholarships to “men” would be unconstitutional under both the Constitution of the United States (14th Arndt) and the State of New York (art I, § 11) since the scholarships were restricted to one sex. It is further argued that administration of the scholarship would violate the provisions of section 1681 of title 20 of the United States Code (title 9 of the Education Amendments of 1972) which provides: “(a) No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance”.
*1068 The Attorney-General requests that a construction of the will be found which would effectuate a general intent by the testator to assist bright and deserving persons who are graduates of the Croton-Harmon High School and would allow scholarships to be awarded to both male and female graduates thereby avoiding any conflict with the law and public policy and removing from jeopardy the substantial financial assistance received by the school district from the State and Federal Governments.
“It is axiomatic that a testator may dispose of his property as he sees fit so long as it is not contrary to law or public policy (Matter of Kelley, 225 App. Div. 29, affd. 251 N. Y. 529; Matter of Kramer, 172 Misc. 598, 602).” (Matter of Hartman, 76 Misc 2d 339, 340.) Within those limitations, the freedom of jus disponendi is part of our American liberties and a charitable trust for the benefit of a small and narrow class, however prejudiced or arbitrary the nature of the classification, is a disposition within the right of a testator to create (4 Scott, Trusts [3d ed], §375.2; Constitutionality of Restricted Scholarships, 33 NYU L Rev 604, 616). The Supreme Court of New Jersey in Mills v City of Philadelphia (52 NJ Super 52, 58) in commenting on the opinion of the United States Supreme Court in Commonwealth of Pennsylvania v Board of Trusts (353 US 230) stated: “The court in no way indicates any restriction on the right of an individual to limit the individual’s right to create trusts for the benefit of any person, class, or legal objective whatsoever, whether the trust so created is limited or discriminatory in any way or not. To have held otherwise would have established a precedent prohibiting anyone from bequeathing or devising his property other than to or for the benefit of all persons, or all objects of a testator’s bounty. Carrying such a prohibition to its natural conclusion, no one would be permitted to create trusts or give to a class favoring his church, his fraternal organizations, his charitable interests, or his natural origins.”
expressed purpose of testator to provide scholarships for “bright and deserving young men” is set forth in the will clearly and without ambiguity. No alternative or gift over is provided and no construction is required to ascertain testator’s intent or dominant purpose. “If intention of *1069 a will-maker is to be found in the words used in the will and these are clear and definite there is no power to change them. (Matter of Watson, supra.) As is stated in Davids on the New York Law of Wills: ‘When intention can be ascertained as a fact from the instrument itself *** there is no occasion for a presumption in respect thereof, and the decision should not be affected by the rules in question. Hence the rules of construction are to be disregarded where the decedent’s intention is clearly or sufficiently manifest, or where the language of the instrument is plain and its meaning obvious.’ (Vol. I, §491, p. 805; see Matter of Rollins, 271 App. Div. 982, affd. 297 N. Y. 612.)” (Matter of Bisconti, 306 NY 442, 445.)
The question is not the intent of the decedent, which is clear, but whether, under the circumstances that exist, a trust for scholarships for men only, is illegal or against public policy. It has long been established that the Fourteenth Amendment of the United States Constitution is addressed to the States and does not bar private discrimination (Shelley v Kraemer, 334 US 1, 13; Civil Rights Cases, 109 US 3,11.) Numerous cases have upheld restrictions with respect to the selection of beneficiaries as valid, enforceable and clearly not against public policy.
One of my predecessors pointed out that “In considering the validity of charitable and educational gifts, the Courts have consistently held that the mere restriction of beneficiaries to a limited class of persons does not invalidate the trust so long as the general purpose of such trust is charitable or educational in nature, and so long as the beneficiaries constitute a reasonable number of persons and are not limited to the natural object of testator’s bounty. Matter of Rupprecht’s Will, 271 App. Div. 376, 381, 65 N.Y.S.2d 909, 913, affirmed 297 N.Y. 462, 74 N.E.2d 175; Matter of Swan’s Will, 237 App. Div. 454, 261 N.Y.S. 428, affirmed 263 N.Y. 638, 189 N.E. 734; Matter of Skuse’s Estate, 165 Misc. 554, 1 N.Y.S.2d 202; Scott on Trusts, Vol. 3, Sec. 270.6.” (Matter of Folsom, 155 NYS2d 140, 145, affd 6 AD2d 691, affd 6 NY2d 886.) In that case, the testator created an educational fund to aid “needy and worthy young men” in their education and training in any vocation. In Butterworth v Keeler (219 NY 446), a trust to *1070 establish a school for girls was found to be a valid charitable trust. In other jurisdictions likewise, sexual restrictions have been upheld and found not to be against public policy or illegal. In Matter of Long (5 Pa D & C 3d 602), the Pennsylvania court found that with respect to “white women” as trust beneficiaries, the racial restriction should be removed but not the sex restriction. In Lockwood v Killian (172 Conn 496), it was held that although the restriction to males was not illegal, because the trustees could not find enough candidates to exhaust the income, the scholarships might be given to girls under the cy pres doctrine. In Matter of Zahn (16 Cal App 3d 106), it was held that a trust establishing a rest home for Christian women and girls was not invalid. (See, also, Moore v City & County of Denver, 133 Col 190; Harrold v First Nat. Bank of Fort Worth, 93 F Supp 882; Shapiro v Columbia Union Nat. Bank & Trust Co., 576 SW2d 310 [Mo].) There is no definitive rule that classifications based on sex are in all cases unconstitutional. (Cf. Matter of Cram,_Mont_, 606 P2d 145; Frontier v Richardson, 411 US 677; Stanton v Stanton, 421 US 7; Matter of Ogilvie, 83 Misc 2d 896; People v Weidiger, 96 Misc 2d 978.)
The courts are committed to protecting the rights of all citizens to an equal educational opportunity and to the encouragement of private charitable trusts. It can be argued that sex restrictions in scholarships in certain cases are reasonably related to the promotion of education since any aid from private sources, however restricted, makes available additional money for education to all and is socially beneficial to the community at large. Such a classification based on sex is not against declared Federal public policy and is educationally and socially beneficial to the community at large.
While it appears that the trust in article sixth of the will is neither illegal nor against public policy, the* question remains whether the provisions can be carried out as written without placing in jeopardy possible Federal financial assistance for the Croton-Harmon Union Free School District by reason of the restrictions as provided in section 1681 of title 20 of the United States Code (title 9 of the Education Amendments of 1972). The reluctance of the *1071 school district to administer the scholarship fund and risk the loss of Federal funds is understandable. Correlated to this question is whether action taken by the court to carry out the terms of the legacy would constitute prohibited judicial State action. If the testator had provided for a private person to administer the scholarship fund, there would be no questions of unconstitutionality or loss of Federal aid by the school district.
“There was ‘embedded in our constitutional law’ the principle that ‘the action inhibited by the [Equal Protection Clause] of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful.’ Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 843, 92 L.Ed. 1161 (1948). Private conduct abridging individual rights does no violence to the Equal Protection clause unless to ‘some significant’ extent ‘the State in any of its manifestations has been found to have become involved in it.’ Burton v. Wilmington Parking Authority, 81 S.Ct. at 860. It is clear therefore that private discriminatory action is not violative of any constitutional principle and is indeed beneficial to a freedom loving society. It is only when the State ‘so far’ insinuates itself into ‘a position of interdependence’ that it becomes a ‘joint participant’ in the challenged activity or where private conduct becomes ‘so entwined’ with governmental policies that there is a violation. Evans v. Newton, 86 S.Ct. at 488; Burton v. Wilmington Parking Authority, 81 S.Ct. at 862. ‘The inquiry must be whether there is a sufficiently close nexus between the State and the challenged action ... so that the action . . . may be fairly treated as that of the state itself.’ Jackson, 95 S.Ct. at 453.” (Shapiro v Columbia Union Nat. Bank & Trust Co., 576 SW2d 310, 318 [Mo], supra.)
Where the “impetus for the discrimination is private, the State must have ‘significantly involved itself with invidious discriminations’ *** in order for the discriminatory action to fall within the ambit of the constitutional prohibition.” (Moose Lodge No. 107 v Irvis, 407 US 163, 173.)
The bequest made to the school district under article sixth is a charitable gift. While it is not worded as a trust *1072 in the technical sense, in view of the requirement to use the income for the purposes therein expressed, it would be incumbent upon the Attorney-General to see that the trust expressed therein is carried out in all its terms so long as it is not contrary to law (St. Joseph’s Hosp. v Bennett, 281 NY 115; EPTL art 8). Since the board of education of the school district is unwilling or unable to administer the scholarship fund as clearly set forth in the will, the court must appoint a new trustee so that the trust can be carried out (Matter of Lawless, 194 Misc 844, affd 277 App Div 1045; 4 Scott, Trusts [3d ed], §§397, 397.1). Selection by the court of a trustee in place of the board of education to administer the scholarship fund is necessary in order to execute the trust and is specifically provided by law (SCPA 1502). Commonwealth of Pennsylvania v Brown (270 F Supp 782, affd 392 F2d 120, cert den 391 US 921), cited by the Attorney-General as involving prohibited judicial State action, is readily distinguishable. In that case, as was also true in the case of Evans v Newton (382 US 296), there had been a long history of State and municipal involvement prior to the action taken by the court to appoint private trustees. In the instant case, there is no history whatsoever of any direct State involvement. The scholarship fund provided under article sixth of the will comes before the court as part of the accounting proceeding by the executrix and the construction to be given to the terms thereof. The mere supervision of and appointment of trustees by a probate court does not alone amount to proscribed State entanglement (Commonwealth of Pennsylvania v Brown, 270 F Supp 782, 787, supra). Similarly, the appointment of private trustees by the court was utilized to carry out the educational grants in Matter of Cram (_Mont_, 606 P2d 145) and Shapiro v Columbia Union Nat. Bank & Trust Co. (576 SW2d 310 [Mo], supra).
Whatever his reasons may have been, the decedent had a right to restrict the beneficiaries of his largess to “deserving young men” even though in doing so, his action discriminated against deserving young women. It is not for the court to speculate what the decedent would have done with his estate if faced with the impossibility of benefiting only “deserving young men”. While not given any weight *1073 by the court in arriving at the decision herein, it is noted that the decedent consistently sought to aid young men as disclosed in the report of the guardian ad litem appointed to protect the interests of unknown distributees who reported that his investigation disclosed that the decedent also established a trust fund to provide scholarships to be awarded to young men from the Croton-Harmon Union Free School District attending Columbia University in a prior will dated June 30,1961. Subsequently, a second will was executed on December 4, 1974 which contained the same provisions as the 1961 will with regard to a residuary bequest to provide scholarship funds for young men.
Accordingly, article sixth of the will is construed as creating a trust of the residuary estate, the income from which shall be used for the purpose of providing scholarships or grants for bright and deserving young men who have graduated from the high school of the Croton-Harmon Union Free School District and whose parents are financially unable to send them to college. A trustee will be appointed in the decree to be made herein to administer the trust created in article sixth of decedent’s will as construed. The executrix and the Croton-Harmon Union Free School District are directed to pay over any funds distributed or constituting the residuary estate together with any interest earned thereon to the trustee appointed herein within 30 days of the decree appointing the trustee. The selections to be made by the trustee of scholarship beneficiaries shall be the independent action of the trustee but it shall solicit applications from among the graduating students or graduates of the high school of such school district and may consider any recommendations that may be made to it by the Board of Education of the CrotonHarmon Union Free School District or principal of the high school.
The court wishes to acknowledge the well-written analysis of the law contained in the report submitted by Jonathan G. Blattmachr, Esq., guardian ad litem for unknown male prospective scholarship recipients. He is commended for the thoroughness of his research and the detail of his report in support of the interests of his wards.