In the Matter of the Estate of CLARK W. WILSON, Deceased. KEY BANK et al., Respondents; STATE OF NEW YORK et al., Appellants.

Third Department, June 3, 1982

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General* (*Jane Levine, Deborah Bachrach* and *Lawrence S. Kahn* of counsel), for State of New York, appellant.

*Abigail A. Jones, Annette L. Nazareth, Lenore W. Tucker, Phyllis N. Segal* and *Anne E. Simon* for NOW Legal Defense and Education Fund, intervenor-appellant.

*Michael Seagriff* for Key Bank, respondent.

*Biagio DiStefano,* guardian ad litem for male students, respondent.

OPINION OF THE COURT

KANE, J.

Clark W. Wilson died a resident of the County of Madison on June 4, 1969. After a series of general and charita-

ble specific bequests in his last will and testament, dated October 25, 1966 and duly admitted to probate September 8, 1969, he devised and bequeathed the residuary of his estate to the First Trust and Deposit Company of Syracuse, New York (now Key Bank of Central New York, N.A.), as trustee, for the uses and purposes as follows:

"a. The residue of my estate shall be held by my trustee as a permanent fund, the income from which is to be applied to defraying the education and other expenses of the first year at college of five (5) young men who shall have graduated from the Canastota High School, three (3) of whom shall have attained the highest grades in the study of science and two (2) of whom shall have attained the highest grades in the study of Chemistry, as may be certified to by the then Superintendant [sic] of Schools for the Canastota Central School District.

"b. Such gift to each such young man shall be equal to twenty percent (20%) of the net income from said permanent fund as may be determined for the fiscal period ending June 30th of each year, commencing one year following the date of my death * * *

"d. In the event that any graduate or graduates of Canastota High School shall enroll in an accredited medical school working towards a degree of Doctor of Medicine, then the high school science awards shall be reduced by the number of such Canastota High School graduates so enrolled, and each such medical student shall receive one of the awards that would have gone to the science student or students".

For a period of 11 years the trust was administered apparently without incident. However, in March, 1981, as a result of a complaint filed with the United States Department of Education (Office of Civil Rights) that the Canastota Central School District (district) discriminated on the basis of sex in the area of student service, namely, comparability of awards and honors, the district declined to certify the necessary information to the trustee which was required to determine eligibility for financial assistance under the provisions of the trust. This decision was motivated by advice from the Department of Education that the

district would be prosecuted for violation of title 9 of the Education Amendments of 1972 (US Code, tit 20, § 1681) if it persisted in providing such information based on non-gender-neutral criteria.

Being deprived of this information, the trustee found itself frustrated in its ability to proceed with the further administration of the trust, and, accordingly, in June, 1981, Key Bank, as trustee, commenced the within proceeding.

An order for service of a citation was obtained directing all interested parties to appear before the Surrogate of Madison County on June 8, 1981, to show cause why a determination should not be made as to the validity, construction and effect of the trust provision of paragraph ELEVENTH of said will. Appearing on the return date were the trustee, the guardian ad litem appointed by the court, the Attorney-General of the State of New York, and the National Organization of Women Legal Defense and Education Fund, which was granted leave to intervene as an interested party.

Thereafter, and following oral argument, the court in a written decision found that the clear and unambiguous language of the will required no judicial construction, that the continued administration of the trust according to its terms was not violative of any provision of the United States Constitution or title 9 of the Education Amendments of 1972 (US Code, tit 20, § 1681), and that any regulation promulgated pursuant thereto to the contrary was invalid. In addition, the court observed that should the district continue to deny certification of the necessary information required to implement the provisions of the trust, there were adequate remedies available to the trustee. Those remedies were not identified. Moreover, the Surrogate did not order the district to produce a list of eligible students nor did his decision contain any suggested legal authority or basis for such an order.

The simple answer is, in this court's view, that there is no legal basis for ordering such a disclosure. There is no obligation, contractual or otherwise, on the part of the district to supply the trustee with the necessary list, and

any such direction by a court would raise serious questions as to the constitutional and statutory legality of such an order (US Const, 14th Amdt; US Code, tit 20, § 1681), issues which are not before us in this proceeding. Suffice it to say that because the district has voluntarily refused such disclosure, administration of the trust according to its literal terms is impossible. Accordingly, the factual situation presented is a classic case for the exercise of the court's cy pres powers (EPTL 8-1.1, subd [c]; see *Matter of Neher,* 279 NY 370; *Matter of Hawley,* 32 Misc 2d 624).

Having little difficulty in concluding that cy pres should be employed, we now are faced with the more troublesome question of deciding in what manner those powers should be exercised. Both statutory mandate and controlling case law require that any modification of the terms of the trust must result in provisions which most closely approximate the expressed intent of the testator (see *Sherman v Richmond Hose Co. No. 2,* 230 NY 462, 473; *Matter of MacDowell,* 217 NY 454, 465; Greenfield, Practice Commentary, McKinney's Cons Laws of NY, Book 17B, EPTL 8-1.1, 1981-1982 Pocket Part, pp 140, 141).

Appellants urge removal of the gender restriction as the best method of perpetuating the testator's general intent, which they argue is manifestly to benefit all students in the district, as evidenced by the provision for assistance to *any* student in medical school and the absence of any gift-over provision. Such a resolution is, at first blush, appealing, for arguably limiting scholarships to young men may not have been of primary importance. However, the court's power over the disposition of other people's assets is limited to removing restrictions only if they are incompatible with the testator's dominant purpose (cf. *Matter of Syracuse Univ. [Heffron],* 3 NY2d 665). In the instant matter, the circumstance creating impossibility of performance is simply the refusal of the district to certify the requisite list of names. Thus, the gender restriction is not necessarily at war with the testator's general charitable intent and the obstacle confronting the trustee can be removed by eliminating the certification requirement. Apprised of the availability of scholarships, students of the district, with grades in hand, could apply directly to the trustee, and it could

make the required determinations in accordance with the mandate of the trust.

Appellants next contend that regardless of the testator's intent, the gender restriction should be removed because it is adverse to the State's public policy of promoting equal opportunity in education. However, although a gender-neutral educational trust is preferable on public policy grounds to one which imposes a gender restriction, there is another competing public policy consideration, namely, preserving the right of the testator to dispose of his property as he wishes (see *Matter of Hughes,* 225 App Div 29, affd 251 NY 529). This rule becomes even more compelling when applied to the area of private charitable trusts, for one of the very reasons for the rule is to encourage bequests for charitable purposes. A provision for the furtherance of education and learning is, without question, a charitable purpose (*Butterworth v Keeler,* 219 NY 446). Therefore, while a gender-neutral provision would be preferable, we decline to adopt a rule the effect of which would be to permit a court to exercise its cy pres powers according to its perception of current public policy, rather than in accordance with the unambiguous intent of the testator. Thus, although the terms of the trust restrict, in part, the beneficiaries thereof to a particular class, its validity is not impaired as long as the general and dominant purpose of the trust is charitable or educational in nature (*Matter of Rupprecht,* 271 App Div 376, affd 297 NY 462; *Matter of Johnson,* 108 Misc 2d 1066).

The decree should be modified, on the law and the facts, by striking the first two decretal paragraphs thereof, and substituting therefor provisions that circumstances have so changed that it is impossible for the trustee to perform in accordance with the literal provisions of paragraph designated "ELEVENTH" of the last will and testament of the decedent herein, and substituting therein a provision for application by qualified students for scholarships directly to the trustee herein in accordance with this opinion, and, as so modified, affirmed, without costs.

MAHONEY, P. J., SWEENEY, WEISS and LEVINE, JJ., concur.

Decree modified, on the law and the facts, by striking the first two decretal paragraphs thereof, and substituting therefor provisions that circumstances have so changed that it is impossible for the trustee to perform in accordance with the literal provisions of paragraph designated "ELEVENTH" of the last will and testament of the decedent herein, and substituting therein a provision for application by qualified students for scholarships directly to the trustee herein in accordance with this opinion, and, as so modified, affirmed, without costs.